Good morning, your honors. My name is Jennifer Zaria. I'm from the Legal Aid Society of San Diego. I represent the appellant Teodoso Serrano Moreno. I'd like to reserve two minutes at the end for rebuttal. You see the clock? Yes, I do. Okay, you have whatever time is left. Okay, thank you. So long as it's not a little red dot. If it's a red dot, then you're on negative numbers, and then you only have what we give you. Okay, thank you very much. This case has two key issues. The first issue is the failure of the ALJ to consider relevant and pertinent lay witness testimony. The second issue in this case is the failure of the ALJ to properly address and evaluate. This is the sister, right? Yes, this is the sister. This is Mr. Moreno's sister who testified at the hearing and on paper. The second issue is the failure to properly address and evaluate alleged instances of partial compliance. The rule of law in the Ninth Circuit is that ALJs have to consider competent lay witness testimony. If an ALJ chooses to reject that competent lay witness testimony, the ALJ must give specific reasons that are germane to each witness. The testimony cannot be disregarded without comment. So in the decision, the ALJ has to give those reasons in writing. And the facts of this case show that the sister was in court testifying, and she testified to the extreme limitations that Mr. Moreno has in his activities of daily living. And this testimony directly relates to his ability to work, and the ALJ did not consider this testimony with respect to his ability to work, nor did she give specific reasons for rejecting this testimony that are germane to this sister. All she did was restate what Mr. Moreno's sister told Mr. Moreno's treating psychiatrist, Dr. Picardo. She restated the statements that she made to Dr. Picardo during two visits in her decision, but she did not explain why she rejected Mr. Moreno's sister's testimony. So this is not a case where we sometimes get whether ALJ or the IJ, for that matter. You know, it's quite similar. There's a witness, and never mentioned, so you have doubts as to whether the ALJ even remembered there was a witness or took into account at all. This is a case where the witness is specifically mentioned, so we know the ALJ has the witness's testimony in mind, which to some extent heralds the testimony, right? Yes. Isn't it, in those circumstances, inappropriate to assume that the ALJ must have discredited part of the testimony that he does not cite? No, Your Honor. Or she is the... The appellant is a he. The ALJ is a she. She, right. Yes. She does not credit. No, it's not appropriate in this case, Your Honor, because all she did was restate what Mr. Moreno's sister said to the psychiatrist. And this testimony that she provided in court and in the two third-party reports that were submitted to the commissioner described extreme limitations in his activities of daily living, excessive sleeping. He would not come out of his room. He would not eat sometimes. This is probative evidence, and it's relevant to his ability to work. And she mentioned it, but she did not explain why she was rejecting this testimony. The law says it. She seemed to credit it as... She credited it, yeah. I guess I may have a question in here. Yes, go ahead. She credited it as if it was supporting the psychiatrist's evaluation that he was not complying with meds, and if he took his meds, it was controllable. So she credited the testimony for corroborating a fact of his noncompliance. Isn't that correct? Well, she... Isn't that correct? Yes, it is, Your Honor. Yes, okay, so stop. Okay. Stop. Yes. Yes. Okay, so your point then is that she went on to testify that it was much more extensive than simply a failure, a willful failure to take his meds, but it was acted out in a variety of ways that suggests it was part of the disease itself. Yes. Isn't that your point? Yes, Your Honor. And the ALJ doesn't let us know, in her opinion, whether or not she is discrediting or discounting or rejecting that. Isn't that correct? Yes, that is correct, Your Honor. It helps to listen to the question. Yes, thank you. Yes, she did not... I have a question, an add-on to that. There is, I don't know if it's in the record, but it's referred to in the briefs, I believe, or maybe in the... Well, it can't be in the ALJs. Maybe it's in the magistrate judge's order that there were benefits that were awarded to... He was found disabled in October 2007. Is that part of the record? That is... The only place I saw that mentioned is in the appellant's opening brief, but it is not a part of the record, of the administrative record, and it was not mentioned in the ALJ's decision. The... I'm sorry, you saw it in the appellant's? The only place that I saw that mentioned is in the appellant's opening brief, in our opening brief, but I did not... You put it in. Yes, well, I didn't write the brief, but the person who wrote the brief put that in there, but I did not see anything regarding the new application that he had filed that was approved after this administrative hearing, is as a part of the record, as a part of the administrative record. Okay. Is... I'm not clear on this point. Perhaps you can clear me out. Was there a vocational expert in this case? Yes, there was a vocational expert who testified at the end of the hearing. And was the vocational expert asked by either the ALJ or anyone present to assume as true what the sister testified to in terms of bailing limitations? Yes, he was asked a question by the appellant's sister that was based on the testimony provided by the appellant's sister. I believe it was that if he was... It was about his excessive sleeping and or not leaving his room, and that would... If somebody was doing that for a two-week period of time, whether that person would be able to work, and the vocational expert testified that that person would not be able to sustain employment. And is it that point, among others, is that one point you're focusing on? Because as I understand it, the ALJ did not say, I don't believe the sister when she described all of this. Is that correct? Yes, Your Honor. Okay. Okay. Okay. Thank you. May I continue? If you wish, or you could save your time for the webinar. The only other issue I want to address is the issue of partial compliance, that it was not addressed appropriately by the ALJ. You know, if we had a question about that, we'd probably ask you. Okay. I have nothing further then. Okay. We'll hear from the government. Good morning. Your Honor, and may it please the Court, my name is Katherine Watson, and I represent the appellee, the Commissioner of the Social Security Administration. Welcome to the Ninth Circuit. Thank you. Do you have any disagreement with the question that I asked, or the foundation for it that I asked of your opponent? Namely, that the sister's description of daily behavior restrictions was put to the voc expert, the VE expert, as a hypothetical, and his response was that type of individual could not find work in the national economy. Is any part of that incorrect? No. The vocational expert was asked that hypothetical by his attorney at the time. And the voc expert said, can't find work in the national economy if that's true. That's correct. And did the ALJ ever say, I don't believe the sister, or make factual findings saying the sister's testimony in this regard is inaccurate, not believable? The ALJ did not state that in the decision. Isn't that the end of the case? It is not, Your Honor. Tell us why. The appellant overlooks the fact that the sister's description of his symptoms were descriptions of his symptoms while he was noncompliant. And the ALJ properly found that the appellant was not eligible for benefits because of his willful noncompliance under the U.S. Code of Federal Regulations, Title 20, Section 416.930. That only applies if the noncompliance is disconnected from the disease. In this case, there is not evidence that it is connected to the disease. But that's what the sister's testimony meant to. The sister's testimony, if I'm understanding your question correctly, the sister's testimony does discuss limitations of his isolating and paranoia, which are items that the ALJ doesn't mention. And those symptoms are shown by the medical record, specifically the treating doctor, Dr. Picardo, that excerpts of Record 158 talks about compliance leads to improvement of symptoms, such as paranoia and isolating. And also an excerpt of Record 83, the medical expert, Dr. Bolter. Does any expert, just to focus the question then, does any expert opine that his noncompliance is disconnected from his illness? There is record of that. Dr. Bolter discusses his lack of cooperation. That's descriptive. Is there any expert opinion that says that he is perfectly capable, if he wants to, of taking care of all this if he just takes his meds? I would say that there is. Okay. And that is what? Dr. Picardo, the treating doctor, states, one, so showing that he is capable of complying. Again, that's excerpts of Record 158. And then he shows that there is time that he is not compliant, excerpts of Record 168. And most importantly, on excerpts of Record 197, he states that the disability is not permanent and that if he were to comply with the treatment, he may be able to work. And Dr. Bolter, under oath, testified that that opinion is supported by the medical evidence, including consultative examining psychiatrist Dr. Rodriguez, state agency psychiatrist Dr. Hurwitz and Dr. Lomez, and hospital records, that claimant is willfully noncompliant. He has shown drug-seeking behavior that backs up his not only lack of compliance, but also was the basis the ALJ referenced that with regard to finding claimant and appellant not credible, which appellant does not dispute. But still the ALJ didn't do that analysis, did she? Well, she didn't say, I understand that if what the sister says about behavior is completely true and medically recognizable, that the VOC expert's testimony would stand. But I disbelieve that because of this other testimony. She didn't do that, did she? No. And I certainly wish that she had. The Social Security Administration expects its ALJs to weigh all of the evidence before them. And, accordingly, this Court has remanded cases citing an ALJ's failure to discuss or failure to even mention a lay witness. But this is not such a case. In this case, the ALJ does mention and discuss the sisters, the substance of the sisters' statements, including that when noncompliant, her brother was isolating and paranoid and unable to find work. My question is, is there a specific finding by the ALJ where she says, I think that the behavior described by the sister is purely and exclusively the result of noncompliance or the result of noncompliance. For that reason, I accept what the experts say and I disbelieve her. Was that done? That specific statement was not made by the ALJ. Anything like it? I would argue that the ALJ's undisputed discrediting of appellant's testimony, which also reflects those different symptoms, the ALJ, she did discuss that those symptoms were undermined by the fact that those symptoms were treatable and that he failed to treat them despite being under the care of a treating physician over the period of years and knowing what that regimen was and having an advocate in the sister. Under our law, can a district court affirm the administration, the Social Security Administration, where the ALJ does not discuss evidence? In other words, in these appeals or petitions for review, it is different than a normal civil setting where we can affirm for any reason apparent in the record, correct? Correct. The district court can affirm not only because under Howard, the ALJ is not required to mention every single piece of evidence before them. This is pretty significant, isn't it? This is pretty significant, isn't it? If what the sister says is sustainable, the VOC expert said he's disabled. The crux of our argument is still that even if you credit the sister's statements as true and say, yes, he's isolating, yes, he can't concentrate for three minutes, yes, he won't eat his oatmeal, yes, he stays in his room, that's all when he's not complying with his medication even though he's under the care of a psychiatrist. And because he won't comply, his symptoms, which have been proven to be remediable. Was she asked that? The sister? The sister was not asked that. On the cross? The sister was asked which question? The sister was asked whether he was compliant, and on the testimony under oath, she testified that he was taking too much medication. So please let me know if I didn't answer your question. You did. Okay. So how do you then, your position is that the symptoms that the sister testified to was a result of noncompliance. Correct. But how do you tie that into her testimony? Does she say he was noncompliant? Yes, she does. She says that he took too much medication, and that can be found at Excerpts of Record, page 62. So the noncompliance was that he took too much, not that he didn't take enough? It actually goes up and down. Back in March of 2006, Dr. Picardo noted that he took too little. The sister reported to Dr. Picardo in December of 2006 and February of 2007 that he was partially compliant. And then the testimony, the hearing was in April of 2007. And also with regard to the subsequent grant, that is after the ALJ's decision in this case, and we don't know the medical facts underlying that grant. It's not part of the record in any of it, is it? Not part of the record. In sum, the ALJ properly found the claimant not disabled and properly weighed the lay witness testimony. We ask that you affirm the district court's judgment. Thank you. Thank you. You have some time left. Your Honor, I'm not here to argue the facts of this case. The ALJ did not follow the law. She did not state specific reasons that were germane to the sister when she decided to reject her testimony. What's your response to your opponent's argument  in which the VOC expert said basically equals disabled? That that was by her own testimony while he was noncompliant. What's your response to that? I believe that my response to that is that the ALJ did not follow the law and that she did not investigate whether this alleged partial or noncompliance was willful and justified. I can see a couple of responses here. One is that's not what she said. Yes. You're not saying that. Correct? Yes. Yes, what? Correct? Yes, it's correct. You're not saying that? No, I'm not saying that. Okay. Or it's not clear from her testimony. Are you saying that? Well, I am saying that. It is not clear. Because you have her saying that she took too much medication. Was that just one time? We don't know how many times. I suppose the other alternative is because it's not clear, that increases the importance of specific findings. Yes, it does. Well, it's one thing to have law that says if we discredit a witness's testimony or an ALJ discredits a witness's testimony, it has to be explicit. But if the witness's testimony is arguably consistent with the ALJ's finding, then do we have law that says you have to discuss a witness's testimony even though ALJ may consider it consistent with her ruling? Yes, she still has to discuss that testimony. And where is that? It's the – What case is that? It's a – there's a Nguyen B. Chater case that says that lay witness testimony as to a claimant's symptom or how an impairment affects its ability to work is competent evidence and therefore cannot be disregarded without comment. She did not make a comment as to why she was rejecting this testimony. She said, But the government's argument is that she didn't reject the testimony, that her ruling was consistent with the testimony, but the testimony has to be understood as having said, yeah, you know, he's noncompliant and, you know, he's inconsistent in taking his medications. And in light of that, he was – yeah, sure, he showed these symptoms. And given so-called students, is there anything for the ALJ to say? Well, my response to that is that she did acknowledge what the sister said, but she only acknowledged a portion of that. She did not acknowledge or take into consideration a significant part of the sister's testimony regarding the fact that he sleeps all of the time, does not come out of his room, he's not eating properly, he cannot bathe, he cannot groom himself, that he needs her assistance in all of these tasks, his activities of daily living. She did not mention any of that testimony in her decision. She only mentioned what the sister said to Dr. Picardo during the visits. She mentioned exactly what Dr. Picardo stated in his medical records in two specific reports, but she did not expand on that by including what the sister testified to at the hearing and what the sister testified to in her written reports. She just completely disregarded that part of her testimony. And that testimony directly affects his ability to work. Okay. Thank you. Thank you. On occasion, Sally, you will stand summarily. Next case, United States v. Greer.
judges: Kozinski, Hawkins, Fisher